1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MICHAEL STEWART,

               Plaintiff,

v.

CITY OF OCEANSIDE, et al.,

               Defendants.

Civil No.14cv1472 AJB (JLB)

ORDER:

(1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS, (Doc. No. 2); and

(2) DISMISSING THE COMPLAINT WITH LEAVE TO AMEND, (Doc. No. 1)

      Plaintiff Michael Stewart (hereinafter "Plaintiff" of "Stewart"), a nonprisoner proceeding *pro se*, has submitted a Complaint alleging civil rights violation under 42 U.S.C. § 1983.  (Doc. No.1.)  Plaintiff has not paid the $450 civil filing fee required to commence this action, but rather, has filed a motion to proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a).  (Doc. No. 2.)  Plaintiff's motion to proceed *in forma pauperis* is **GRANTED**.  However, Plaintiff fails to state a cognizable claim, thus his Complaint is **DISMISSED** with leave to amend.

# BACKGROUND

## I. Factual Allegations [1]

On August 29, 2013, Plaintiff was attacked while walking at Oceanside Beach, City of Oceanside, California.  Plaintiff states that he protected himself against his attackers by using a knife. (Doc. No. 1 at 1.)  According to Plaintiff, two weeks prior to the August 29, 2013 incident, Plaintiff contacted the Oceanside Police Department to report threats made against him. "TOLD THEM THAT THIS (*sic*) PEOPLE HAD BEEN THREATHING (*sic*) ME, HARRASSING (*sic*) ME BECAUSE I WOULD RIDE THEM (*sic*) AROUND IN MY CAR SO THEY COULD SELL DRUGS . . . ." (*Id.*)  A dispatch officer instructed Plaintiff to go to the police station to make his report; he did so the next day.  Plaintiff states that he asked an officer to "TELL THEM LEAVE ME ALONG (*sic*). (*Id.*)

When officers arrived on the scene on August 29, 2013, Plaintiff alleges that his attackers made false statements to the officers.  Moreover, one witness who spoke on Plaintiff's behalf attempted to tell the officers that Plaintiff did nothing wrong, but was told to leave. (*Id.*)  Plaintiff was arrested and charged with two counts of PC 245(1) Assault with a Deadly Weapon.  Plaintiff alleges that Officer Chris Ruedi  retained possession of Plaintiff's car keys after booking him in the county jail.  Plaintiff further states that his car was ticketed and impounded.  Plaintiff alleges that such actions were unlawful.

Plaintiff states that during his court case, the only "EVIDENCE THAT OCEANS-IDE POLICE DEPARTMENT HAD IN [his] CASE WAS THE POLICE REPORT AND THEY DID NOT HAVE MY CAR KEYS." (*Id.*) [2]  Plaintiff spent forty-four (44) days in jail.  When he was released, Plaintiff had to pay $1,790.00 for impound fees and $2,011.91 to have his car re-keyed due to Officer Ruedi's alleged unlawful actions.  Plaintiff further alleges that his car was broken into and his personal belongings stolen.

---

[1] All factual allegations are taken from Plaintiff's Complaint (Doc. No. 1.)

[2] No further details are given with regards to Plaintiff's state court proceedings.

14cv1472 AJB (JLB)

1    Plaintiff filed a claim for damages with the City of Oceanside (Claim Number
2    GC2013000147) which was denied by operation of law.  (Doc. No. 1 at Ex. C.)
3          According to Officer Ruedi's Report, attached as Exhibit A to the Complaint, he
4    received a citizen flag at the Oceanside Police Beach Lockup Facility referencing a fight
5    that was occurring behind the building. (Doc. No. 1, Ex. A at 7.)  Officers Ruedi was
6    flagged by witnesses as he and a colleague exited the Lockup Facility.  There, Officer
7    Ruedi saw the suspect, Michael Stewart, holding a "large, black handled, fixed blade
8    knife in his right hand." (*Id.*)  Officer Ruedi states that Stewart appeared to have blood
9    on his clothing and face.  Officer Ruedi then proceeded to draw out his firearm and
10   instructed Stewart to drop the knife and to lie in the prone position.  Stewart complied
11   and Sgt. Stanley handcuffed Stewart without further incident. (*Id.*)  Thereafter, multiple
12   officers assisted in the investigation by locating witnesses, interviewing witnesses, and
13   collecting additional evidence.  While conducting a witness search, Officer Ruedi
14   noticed a black male nearby appearing to be injured.  The subject, later identified as
15   David Williamson ("Williamson"), reported that he had been stabbed by the suspect.
16   Officer Ruedi noticed a small puncture wound on Williamson's left arm. (*Id.*)  William-
17   son stated that he had tried to help a friend who was also being assaulted by Stewart. (*Id.*
18   at 8.)
19          Based upon evidence and statements obtained on the scene, Officer Ruedi formed
20   the opinion that "Stewart was in violation of two counts of PC 245(1) Assault with a
21   Deadly Weapon.  Multiple witnesses identified Plaintiff as using his knife to stab two
22   victims.  Plaintiff was transported to Tri-City Medical Center based upon a laceration he
23   sustained above his eye.  Plaintiff stated to Officer Ruedi that he had pulled the knife in
24   self-defense.  Thereafter he was booked into custody and transported to Vista Detention
25   Facilities. (*Id.*)
26          Plaintiff alleges Officer Ruedi and the City of Oceanside maliciously violated his
27   rights under the Thirteenth and Fourteenth Amendments of the United States Constitu-
28   tion.  Plaintiff contends that as a result of the Officer's action, his application for low-

1 | income housing was denied due to his lengthy history of serious crimes. (*Id.* at 2; Ex. D

2 | Letter Denying Housing Application.) Plaintiff seeks $12 million in punitive and

3 | compensatory damages for mental, emotional and monetary loss. (*Id.* at 4.) Plaintiff also

4 | requests the Court to instate a temporary restraining order against Officer Ruedi because

5 | he is "going through legal means to settle this matter." (Doc. No. 2.)

## DISCUSSION

## I.   Motion to Proceed In Forma Pauperis

Pursuant to 28 U.S.C. § 1915(a), a court may authorize the commencement of a suit without prepayment of fees if the plaintiff submits an affidavit, including a statement of all his assets, showing he is unable to pay filing fees. *See* 28 U.S.C. § 1915(a). However, even if a court finds the plaintiff has submitted adequate documentation detailing his inability to pay, before granting IFP status, the court must conduct a *sua sponte* review of the complaint to determine if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001) ("[T]he provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners.").

Here, Plaintiff has submitted an affidavit to show his inability to pay the filing fees in this matter. (Doc. No. 2.) Plaintiff is not currently employed though he does receive an unspecified amount of money from Social Security, disability, or other welfare. (*Id.* at 2.) Plaintiff has a checking account and has listed the present balance as $ -79.00.[3] Plaintiff owns an automobile with a total of $6,900 still owed. Plaintiff has also listed a number of other debts owed and indicates he has no other assets. (*Id.* at 3.)

Though Plaintiff's affidavit fails to specify the amount he receives from Social Security, disability, or other welfare, the Court, in its discretion, finds that Plaintiff has

---

[3] It appears that Plaintiff's affidavit states that the present balance of his checking account is a negative number.

1    satisfied the necessary showing to proceed in forma pauperis.  *See Weller v. Dickson*,

2    314 F.2d 598, 600 (9th Cir. 1963) (agreeing with the statement that "the privilege of

3    proceeding in forma pauperis is a matter within the discretion of the trial court . . . .").

4    Based on the numerous debt obligations listed compared to assets, the Court finds that

5    Plaintiff is unable to pay the filing fees for his suit to proceed.

6         After granting *in forma pauperis* status, the Court must dismiss the case if the

7    complaint "fails to state a claim on which relief may be granted" or is "frivolous."  28

8    U.S.C. § 1915(e)(2)(B); *see also Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000)

9    (en banc) (noting that 28 U.S.C. § 1915(e) "not only permits but requires" the court to

10   *sua sponte* dismiss an *in forma pauperis* complaint that fails to state a claim). The Court

11   must now review Plaintiff's Complaint to determine whether it states a claim for which

12   relief may be granted.

13   **II.    Initial Screening Pursuant to 28 U.S.C. § 1915(e)(2)**

14   **A.    Legal Standards**

15        After granting IFP status, the Court must dismiss the case if the complaint "fails to

16   state a claim on which relief may be granted" or is "frivolous." 28 U.S.C. §

17   1915(e)(2)(B); *see also Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir.2000) (en banc)

18   (noting that 28 U.S.C. § 1915(e) "not only permits but requires" the court to sua sponte

19   dismiss an in forma pauperis complaint that fails to state a claim). In order to properly

20   state a claim for relief, "a complaint must contain sufficient factual matter, accepted as

21   true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S.

22   662, 129 S.Ct. 1937, 1949 (2009). A complaint must contain more than "labels and

23   conclusions" or a "formulaic recitation of the elements of a cause of action;" it must

24   contain factual allegations sufficient to "raise a right to relief above the speculative

25   level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007). " 'The

26   pleading must contain something more ... than ... a statement of facts that merely creates

27   a suspicion [of] a legally cognizable right of action.' " *Id.*

28

1    A complaint is frivolous "where it lacks an arguable basis either in law or in fact."
2  *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827 (1989) (superseded on other
3  grounds as stated in *Lopez v. Smith*, 203 F.3d 1122, 1126 (9th Cir.2000)). Where a
4  complaint fails to state "any constitutional or statutory right that was violated, nor asserts
5  any basis for federal subject matter jurisdiction," there is no "arguable basis in law"
6  under *Neitzke*, and the court on its own initiative may decline to permit the plaintiff to
7  proceed and dismiss the complaint under Section 1915. *Cato v. United States*, 70 F.3d
8  1103, 1106 (9th Cir.1995).

9    The Court takes note that Plaintiff is proceeding pro se and recognizes its duty to
10 ensure that the *pro se* litigant is afforded a review of his pleadings under a  more lenient
11 standard than if drafted by lawyers.  *See Jacobsen v. Filler*, 790 F.2d 1362, 1368 (9th
12 Cir. 1986); *Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974) ("Pleadings drafted by
13 laymen, proceeding *in propria persona*, are to be interpreted by the application of less
14 rigid standards than those applicable to formal documents prepared by lawyers.").
15 However, it is also the duty of the district court to examine any application for leave to
16 proceed in forma pauperis to determine whether the proposed proceeding has merit and if
17 it appears that the proceeding is without merit, the court is bound to deny a motion
18 seeking leave to proceed in forma pauperis. *Smart v. Heinze*, 347 F.2d 114, 116 (9th Cir.
19 1965).  Plaintiff's Complaint alleges civil rights violations pursuant to 42 U.S.C. § 1983
20 based upon Officer Ruedi's conduct.  Essentially, Plaintiff argues that Officer Ruedi
21 falsely arrested him on August 29, 2013.  Plaintiff's primary claim for damages stems
22 from the fact that he was forced to pay impounding fees for his vehicle as well as costs
23 for re-keying his car when the Oceanside Police Department allegedly lost his keys.

24 **B.    Section 1983 Claims**

25    To state a claim under § 1983, a plaintiff must allege sufficient facts to show: (1) a
26 person acting "under color of state law" committed the conduct at issue, and (2) the
27 conduct deprived the plaintiff of some right, privilege, or immunity protected by the
28

1    Constitution or laws of the United States.  42 U.S.C. § 1983; *Shah v. County of Los*

2    *Angeles*, 797 F.2d 743, 746 (9th Cir. 1986).  Section 1983 claims must also conform to

3    Rule 8's pleading standards.  *See* Fed. R. Civ. Proc. 8.  A complaint must contain more

4    than "threadbare recitals of the elements of a cause of action, supported by mere

5    conclusory statements."  *Iqbal*, 556 U.S. at 678.  Rule 8 is designed to provide defen-

6    dants with fair notice of the claims and the factual allegations supporting those claims.

7    *See McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

8        The United States Supreme Court has explained that any § 1983 claim must begin

9    by isolating "the precise constitutional violation with which the defendant is charged."

10   *Baker v. McCollan*, 443 U.S. 137, 140 (1979).

11        1.     Claims Against Officer Ruedi

12        "A claim for unlawful arrest is cognizable under § 1983 as a violation of the

13   Fourth Amendment, provided the arrest was without probable cause or other justifica-

14   tion."  *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001).[4]

15   Thus, to succeed on a Fourth Amendment claim, Plaintiff must first demonstrate that he

16   was arrested without probable cause.  "Probable cause to arrest exists when officers have

17   knowledge or reasonably trustworthy information sufficient to lead a person of reason-

18   able caution to believe that an offense has been committed or is being committed by the

19   person being arrested."  *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007).

20   Probable cause is an objective inquiry. *Edgerly v. City & Cnty. of San Francisco*, 590

21   F.3d 936, 954 (9th Cir. 2010).

22        Where probable cause for arrest exists under the circumstances for arrest, civil

23   rights are not violated by an arrest even though innocence may subsequently be establis-

24   hed.  *Beauregard v. Wingard*, 362 F.2d 901, 903 (9th Cir. 1966).  By Plaintiff's own

25   admissions, he was in possession of a knife when officers arrived at the scene. (Doc. No.

26

27        [4] The Fourth Amendment is enforceable against the States through the Fourteenth
Amendment.  *Camara v. Mun. Ct. of City & Cnty. of San Francisco*, 387 U.S. 523, 528,

28   87 S. Ct. 1727 (1967).

1 at 1.)  According to Officer Ruedi's report, a witness told him a suspect in possession of a knife was nearby Lockup Facility.  Officer Ruedi also heard witnesses stating a male subject attempted to stab someone. (*Id.* at Ex. A, Probable Cause for Warrantless Arrest Report.)  Thereafter, Officer Ruedi saw Plaintiff with a fixed blade knife in his right hand and blood on his clothing and face quickly walking towards the officer.  Multiple witnesses at the scene, including the two victims, identified Plaintiff as the attacker.  (*See* Reports of Officer Ruedi, Officer Jose Lopez, and Officer James Ridenour, Doc. No. 1, Ex. A.)  Moreover, Officer Ruedi personally saw the injuries on Williamson.  Officer Ruedi's declaration of probable cause for warrantless arrest also details the circumstances of arrest.  (*Id.*)  Based upon the information known to Officer Ruedi at the time of arrest, he placed Plaintiff under arrest for two counts of violation of PC 245(a)(1) Assault with Deadly Weapon.  Even taking Plaintiff's allegation as true, that he was acting in self defense, Officer Ruedi acted with probable cause based on the objective circumstances surrounding the time of arrest.  The defense of good faith and probable cause, available to police officers in a common law tort action, is also available in an action brought under 42 U.S.C. § 1983.  *Pierson v. Ray*, 386 U.S. 547 (1967).

Accordingly, this Court finds that based on Plaintiff's own allegations and the records attached to his Complaint, Officer Ruedi had probable cause to arrest Plaintiff for Assault with Deadly Weapon.

Plaintiff alleges Fourth Amendment violations when Officer Ruedi seized Plaintiff's car keys after he was booked into county jail.  However, once an accused has been lawfully arrested and is in custody, the effects in his possession at the place of detention that were subject to search at the time and place of arrest may lawfully be searched and seized. *U.S. v. Edwards*, 415 U.S. 800, 807-08 (1974). Therefore, Plaintiff has no claim

against Officer Ruedi for Fourth Amendment violation when the Officer seized Plaintiff's car keys.[5]

Plaintiff further alleges violations of his rights under the Thirteenth Amendment, prohibition against slavery and involuntary servitude. (Doc. No. 1 at 2.)  Involuntary servitude "occurs when an individual coerces another into his service by improper or wrongful conduct that is intended to cause, and does cause, the other person to believe that he or she has no alternative but to perform labor." *Brogan v. San Mateo Cnty.*, 901 F.2d 762, 764 (9th Cir. 1990) (citations omitted).  Plaintiff's Complaint, even under the most liberal of readings and by any stretch of the imagination, is woefully deficient in stating a claim of Thirteenth Amendment violation against Officer Ruedi.  There are absolutely no allegations made that would support a showing that Plaintiff was subjected to involuntary servitude.  Based upon the Court's review of Plaintiff's Complaint and the Officer Reports attached as exhibits to the Complaint, the Court fails to see how any of Officer Ruedi's conduct during the August 29, 2013 could amount to a violation of the Thirteenth Amendment's prohibition against slavery and involuntary servitude

Accordingly, Plaintiff's claims against Officer Ruedi are **DISMISSED** for failure to state a claim for which relief can be granted.

4.      Claims against Defendant City of Oceanside

Plaintiff names as a defendant, the City of Oceanside. (*Id.* at 1.)  However, a local governmental unit may not be held responsible for the acts of its employee under a *respondeat superior* theory of liability.  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691, 98 S. Ct. 2019 (1978).  Instead, liability under § 1983 can only be established where the alleged constitutional violation results from an official policy or

---

[5] If Plaintiff meant to plead that his car keys were unlawfully retained and/or lost by the police department, those allegations should be brought under a claim of relief under the California Tort Claims Act.  However, the Court reminds Plaintiff that a claim for conversion against a state agency does not create a basis for federal jurisdiction.  Moreover, even if the Court could exercise supplemental jurisdiction over the conversion claim, it has the discretion to decline to hear such a claim if all federal claims have been dismissed.

1  custom. *Id.* The Ninth Circuit has articulated three ways a plaintiff may establish

2  vicarious liability against a local government entity. *See Fuller v. City of Oakland, Cal.*,

3  47 F.3d 1522, 1534 (9th Cir. 1995). First, a plaintiff may show liability "by proving that

4  a city employee committed the alleged violations pursuant to the city's official policy or

5  custom." *Id.* Second, a plaintiff may show "that, rather than being the product of

6  general official policy, on a given occasion the conduct was the result of a 'deliberate

7  choice... made from among various alternatives by the official or officials responsible for

8  establishing final policy with respect to the subject matter in question.'" *Id.* (citing

9  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986)). Third, a plaintiff could

10  demonstrate that "an official policymaker either delegated policymaking authority to a

11  subordinate or ratified a subordinate's decision, approving the 'decision and the basis for

12  it.'" *Id.* (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126-27 (1988)).

13  　　Plaintiff's Complaint fails to plead such bare facts. Moreover, this Court has

14  already found Officer Ruedi's arrest of Plaintiff justified by probable cause, thus there

15  can be no liability under the Fourteenth Amendment as to the City of Oceanside based on

16  Officer Ruedi's conduct as alleged. As to any Thirteenth Amendment violations brought

17  against the City of Oceanside, even if Plaintiff intended to plead that he was subjected to

18  involuntary servitude when he was required to work in accordance with prison rules

19  during his forty-four day incarceration, such a claim is without merit. *See Berry v.*

20  *Bunnell*, 39 F.3d 1056, 1957 (9th Cir. 1994) ("[T]he Thirteenth Amendment does not

21  apply where prisoners are required to work in accordance with prison rules.")

22  　　As it is clear from the face of Plaintiff's Complaint that these deficiencies cannot

23  be cured by amendment, the Court **DISMISSES** the Complaint against the City of

24  Oceanside for failure to state a claim for which relief can be granted.

25  //

26  //

27  //

28

## CONCLUSION

The Court finds that, at this time, Plaintiff has failed to state claim for which relief may be granted.  A plaintiff should be granted leave to amend when the deficiencies in the complaint can be cured by amendment.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).  In this case, it is unclear whether Plaintiff can allege facts supporting his claims of civil rights violation. As the four page Complaint stands now, there are no factual allegations that could support a claim for civil rights violations.  However, recognizing the Plaintiff is proceeding *pro se*, the "rule favoring liberality in amend-ments to pleadings is particularly important for the pro se litigant." *Id.* (quoting *Noll v. Carlson*, 809 F.2d 1146, 1148 (9th Cir. 1987).  As such, Plaintiff's Complaint is **DISMISSED with leave to amend**.  Plaintiff must file a First Amended Complaint within **thirty (30)** days from the date of this Order.  Failure to file the amended com-plaint in a timely manner will result in the dismissal of this case without prejudice.

DATED:  July 8, 2014

_____
Hon. Anthony J. Battaglia
U.S. District Judge

14cv1472 AJB (JLB)