UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MICHAEL STEWART, | Civil No.14cv1472 AJB (JLB) |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT |
| v. | |
| CITY OF OCEANSIDE, et al., | |
| Defendants. | (Doc. No. 12) |

Pro se plaintiff Michael Stewart filed this action alleging civil rights violation under 42 U.S.C. § 1983. (Compl., Doc. No.1.) By Order of July 8, 2014, the Court granted Plaintiff's motion for leave to proceed in forma pauperis, but dismissed his claims pursuant to 28 U.S.C. § 1915(e)(2). (Order, Doc. No. 5.) The Court gave Plaintiff leave to file an amended complaint, which Plaintiff did. (FAC, Doc. No. 7.) Soon thereafter, Defendants moved to dismiss, which the Court now addresses.

## I.    Facts Alleged in the First Amended Complaint

The following facts are derived from the First Amended Complaint ("FAC") and its attachments.

In August 2013, Plaintiff contacted the Oceanside Police Department to report threats made against him. (FAC 1.) He told the police that "these people" had been threatening and harassing him because he "would ride them around in [his] car to sell drugs."[1] (*Id.*) A dispatch officer instructed Plaintiff to go to the police station to make his report; he did so the next day. (*Id.*) A police sergeant took Plaintiff's report and noted that he knew the leader of the gang Plaintiff referenced. (*Id.*) Plaintiff "only asked that he tell them to leave me alon[e] but they didn't." (*Id.*)

Plaintiff alleges that he was attacked on August 29, 2013, while walking at Oceanside Beach in Oceanside, California. (*Id.*) He used a knife to protect himself, and when officers arrived, they arrested him. (*Id.*) One witness "was speaking on [Plaintiff's] behalf" but Officer Ryan Keim allegedly said that did not want to hear anything the witness had to say. (*Id.*) Additionally, when Plaintiff arrived at the detention center, Officer Keim informed him that they were keeping his keys, prompting Plaintiff to yell at the officers because the car was not involved in the incident. (*Id.*) Plaintiff was eventually jailed for forty-four days. (*Id.*)

Plaintiff asserts that the Oceanside Police and his attackers conspired against him, highlighting the costs he incurred in releasing his vehicle from impound, $1,790, and in having the vehicle re-keyed, $2,011.91. (*Id.* at 2.) Plaintiff further alleges that his car was broken into and his personal belongings were stolen. (*Id.*) He notes that Oceanside Police first said they did not have his keys, but later found them. (*Id.*) Plaintiff filed a claim for damages with the City of Oceanside (FAC Ex. C) which was denied by operation of law. (*Id.*)

Throughout the FAC, Plaintiff references a 911 call, but does not describe who placed the call, under what circumstances the call was made, or the content of call. (FAC 2-6.)

The FAC contains attachments, including several law enforcement reports, various documents related to Plaintiff's vehicle, Plaintiff's claim for damages to the City of

---

[1] All quotes of the language of the FAC and Plaintiff's memoranda have been modified from the "all caps" style used by Plaintiff. Other than modifying the capitalization, the quotes are unchanged.

14cv1472 AJB (JLB)

Oceanside and subsequent rejection, and a letter from the Association for Community Housing Solutions to Plaintiff. (FAC Exs. A-D.)

According to the officer's report attached as Exhibit A to the FAC, the police received a citizen flag at the Oceanside Police Beach Lockup Facility regarding a fight that was occurring behind the building. (FAC Ex. A at 7.) As the officer and his colleague exited the facility, he was approached by witnesses about the incident, one of whom said the knife-wielding perpetrator had run to another side of the building. (*Id.*) The officer then observed Plaintiff holding a "large, black handled, fixed blade knife in his right hand." (*Id.*) Plaintiff appeared to have blood on his clothing and face. (*Id.*) The reporting officer drew his firearm and instructed Plaintiff to drop the knife and to lie in the prone position. (*Id.*) Plaintiff complied and another officer handcuffed Plaintiff, as additional law enforcement arrived. (*Id.*) Multiple officers assisted in the investigation by locating witnesses, interviewing witnesses, and collecting additional evidence. (*Id.*) While conducting a witness search, the officer noticed a male who appeared to be injured. (*Id.*) The man exhibited a small puncture wound on the inside of his left arm and reported that he had been stabbed by "the suspect," positively identified as Plaintiff. (*Id.* at 7-8.) The man stated that he had tried to help a friend who was also being assaulted by Plaintiff. (*Id.* at 8.) Others also positively identified Plaintiff as the perpetrator and reported assaultive actions by Plaintiff. (*Id.* at 7-8.) Another victim was identified, who reported that Plaintiff tried to stab him in the abdomen (*id.* at 7) and had held a knife to the victim's throat (*id.* at 8).

Based on evidence and statements obtained on the scene, the officer formed the opinion that Plaintiff had committed two counts of assault with a deadly weapon. (*Id.* at 8.) The officer noted that multiple witnesses identified Plaintiff as using his knife to stab two victims, he was positively identified by both victims, and he was in possession of a large, fixed-blade knife upon initial police contact. (*Id.*) Plaintiff was transported to a medical center because he had a laceration above his eye. (*Id.*) At the medical facility, Plaintiff

provided a post-*Miranda*[2] statement in which he said he had felt threatened by a group of subjects at the amphitheater[3] and pulled the knife out in self defense. (*Id.*) He was later transported to a detention facility and booked into jail. (*Id.*) The other police reports attached to the FAC contain additional witness and officer statements. Each describes Plaintiff as attacking people with a knife.

Also attached to the FAC is a letter from the Association for Community Housing Solutions, which notes that the organization will not be following through with Plaintiff's application. (FAC Ex. D.) The letter states three reasons for not pursuing the application: (1) Plaintiff's "lengthy history of serious crimes, including assaults dating back at least 5 years" and the pending criminal charges for assault with a deadly weapon, (2) the pending criminal charges stemming from the August 2013 incident in which Plaintiff was accused of attacking others with a knife, and (3) Plaintiff's comment regarding his plans to carry a weapon on his person at all times, in violation of the organization's policies. (*Id.*)

In the present action, Plaintiff alleges that Oceanside Police Department conspired with his attackers, in violation of Plaintiff's civil rights. (FAC 4.) Specifically, he cites his rights protected by the Fourth, Thirteenth, and Fourteenth Amendments and 42 U.S.C. § 1983.[4] (*Id.* at 4-5.) Plaintiff contends that Defendants' willful violation of his civil rights caused him mental and emotional stress, monetary loss, damaged his credit, made his life "more unmanageable," and caused him to stay homeless. (*Id.* at 7.) Additionally, he alleges that the incident with the police resulted in the rejection of his low-income housing application. (*Id.* at 3.) As such, Plaintiff requests $12 million in damages. (*Id.* at 7.) He also

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[3] The amphitheater is located adjacent to the beach lockup. (FAC Ex. A (Keim Report 1).) The Keim Report details Plaintiff's statement. Plaintiff said five or six people began yelling at him and he tried to ignore them but they ran toward him, he pulled his knife, and the people began to punch him. (*Id.*)

[4] Plaintiff also cites 18 U.S.C. § 372, which relates to conspiracy to impede or injure an officer. (*See* FAC 4.) The section has no applicability to the present action. Also included is 18 U.S.C. § 371, concerning conspiracy to commit an offense against or defraud the United States. (*Id.*) This section also has no bearing on this case.

makes mention of punitive damages, though it is unclear if the punitive damages sought are included in the $12 million requested. (*Id*. at 8.)

Defendants now move to dismiss pursuant to Rule 12(b)(6), arguing that Plaintiff has failed to state a claim upon which relief can be granted.[5] (Defs.' Mem. 2, Doc. No. 12-1.) In the alternative, Defendants request a more definite statement, pursuant to Rule 12(e). (*Id*. at 12.) Plaintiff responded (Doc. No. 15), then filed an additional response (Doc. No. 24), and Defendants replied (Doc. No. 25). Because Plaintiff had filed an additional response, the Court issued an order (Doc. No. 26) permitting an additional reply (Doc. No. 27), and the motions were submitted (Doc. No. 28). Plaintiff then filed an additional memorandum (Doc. No. 29), purporting to support his original response. The Court accepted the filing but noted that the briefing was complete and that no additional briefing would be accepted (Doc. No. 30).

## II.   Legal Standard

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff's allegations fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In ruling on a motion to dismiss, the court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. L.A. Cnty*., 487 F.3d 1246, 1249 (9th Cir. 2007).  However, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). Courts may also rely on judicially noticed facts not in dispute. *Lee v. Cnty. of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

A Rule 12(b)(6) dismissal "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*

---

[5] To the extent Plaintiff requests this Court strike Defendants' motion to dismiss (*see* Doc. No. 15), his request is denied.

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility does not equate to probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 664.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Dismissal of claims that fail to meet this standard should be with leave to amend unless it is clear that amendment could not possibly cure the complaint's deficiencies.  *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998).

## III.   Discussion

As it begins its analysis, the Court notes Plaintiff's pro se status and recognizes the Court's duty to ensure that pro se litigants are afforded a review of his pleadings under a more lenient standard than if drafted by lawyers. *See Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974) ("Pleadings drafted by laymen, proceeding in propria persona, are to be interpreted by the application of less rigid standards than those applicable to formal documents prepared by lawyers."). The Court is mindful of this duty as it reviews the FAC.

To state a claim under Section 1983, a plaintiff must allege sufficient facts to show: (1) a person acting "under color of state law" committed the conduct at issue, and (2) the conduct deprived the plaintiff of some right, privilege, or immunity protected by the Constitution or laws of the United States.  42 U.S.C. § 1983; *Shah v. Cnty. of Los Angeles*, 797 F.2d 743, 746 (9th Cir. 1986). Section 1983 claims must also conform to Rule 8's pleading standards. *See* Fed. R. Civ. P. 8. A complaint must contain more than "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Rule 8 is designed to provide defendants with fair notice of the claims and the factual allegations supporting those claims. *See McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

The United States Supreme Court has explained that any section 1983 claim must begin by isolating "the precise constitutional violation with which the defendant is charged." *Baker v. McCollan*, 443 U.S. 137, 140 (1979).

## A.   Underlying Conviction and *Heck v. Humphrey*

Defendants request the Court take judicial notice of three documents: Plaintiff's San Diego Superior Court plea of guilty filed October 7, 2013; the complaint filed September 4, 2013, alleging Plaintiff committed two counts of assault with a deadly weapon; and the misdemeanor judgment minutes dated October 7, 2013. (*See* Request Jud. Not., Doc. No. 12-2.)

Under Fed. R. Evid. 201, a court may take judicial notice of "matters of public record." *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). A court may do so without converting a motion to dismiss into a motion for summary judgment. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *see also Lee*, 250 F.3d at 688 (discussing when courts may consider materials beyond the pleadings in a Rule 12(b)(6) motion).

Here, Plaintiff does not dispute that he pled guilty, but instead acknowledges he has done so. (*See* Pl.'s Filing, Doc. No. 24-1 at 11.) The Court takes judicial notice of the documents as matters of public record. The plea document demonstrates that Plaintiff pled guilty to California Penal Code § 242 regarding battery, and the balance of the charges were dismissed. (Request Jud. Not. Ex. 1.)

Having taken notice of the guilty plea, the Court must consider how it affects the present action. Federal courts will not entertain claims seeking money damages under section 1983 if doing so will require the court to rule on issues in dispute in a state court criminal proceeding. *See Heck v. Humphrey*, 512 U.S. 477 (1994). Under the Supreme Court's holding in *Heck*, a section 1983 action "that would call into question the lawfulness of a plaintiff's conviction or confinement is not cognizable, and does not, therefore, accrue until and unless the plaintiff can prove that his conviction or sentence has been reversed on direct appeal." *Harvey v. Waldron*, 210 F.3d 1008, 1014-16 (9th Cir. 2000) (citing *Heck*, 512 U.S. at 486-87).

Plaintiff requests that this Court "make void" the *Heck* decision, which this Court is without the power to do. Instead, the Court agrees that, to the extent Plaintiff is seeking to call into question the lawfulness of his state conviction, the action is barred. Several of the claims Plaintiff lodges call into question the validity of the underlying conviction. *See Guerrero v. Gates*, 442 F.3d 697, 703 (9th Cir. 2006) (*Heck* barred plaintiff's civil rights claims alleging wrongful arrest, malicious prosecution and conspiracy among police officers to bring false charges against him). Plaintiff has not alleged that his conviction has been invalidated, and has offered nothing to demonstrate that it has. As such, the Court agrees that *Heck* serves as an obstacle to the relief sought and his claim for monetary damages is barred.[6] Even in light of *Heck*, and in an abundance of caution, the Court will continue its analysis.

## B.    Claims Against the Officers

In the original complaint, Plaintiff claimed that Officer Chris Ruedi unlawfully arrested him, prompting the Court to address the claim and ultimately conclude the claim was subject to dismissal. (Compl. 1.) Now Plaintiff presents the same claims, but makes specific allegations against Officers Keim, as well as Officer Ruedi.

The first of these claims relates to Officer Ruedi's alleged unlawful arrest of Plaintiff. "A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Dubner*

---

[6] In one of Plaintiff's responses, he includes mention of expungement of his record. (Doc. No. 24-1 at 13.) This relief is not sought in the FAC, the operative complaint. The Court cautions Plaintiff to be mindful of doctrines that could bar even injunctive relief. *See Carmona v. Carmona*, 603 F.3d 1041, 1050 (9th Cir. 2010) (stating that the *Rooker-Feldman* doctrine "stands for the relatively straightforward principle that federal district courts do not have jurisdiction to hear de facto appeals from state court judgments"); *Batterham v. Mono Cnty. Law Enforcement*, No. CIV S-11-1118 GEB, 2012 WL 423711, at *3 (E.D. Cal. Feb. 8, 2012) (discussing the application to criminal judgments); *Roberts v. Los Angeles City Fire Dep't*, 86 F. Supp. 2d 990, 994 (C.D. Cal. 2000) (same).

*v. City & Cnty. of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001).[7] Thus, to succeed on a Fourth Amendment claim, Plaintiff must first demonstrate that he was arrested without probable cause. "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been committed or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). Probable cause is an objective inquiry. *Edgerly v. City & Cnty. of San Francisco*, 599 F.3d 946, 954 (9th Cir. 2010).

Where probable cause for arrest exists under the circumstances for arrest, civil rights are not violated by an arrest even though innocence may subsequently be established. *Beauregard v. Wingard*, 362 F.2d 901, 903 (9th Cir. 1966). According to Officer Ruedi's report, which is attached to the FAC, he and a fellow officer exited the building and were flagged by witnesses regarding a fight. (FAC Ex. A at 7.) He heard several witnesses say that a male was trying to stab someone. (FAC Ex. A at Probable Cause for Warrantless Arrest Report.) The officer then observed Plaintiff holding a "large, black handled, fixed blade knife in his right hand" and "quickly walking toward" the officers. (FAC Ex. A at 7.) Plaintiff admits that he was using a knife, but asserts that it was to protect himself. (FAC 1.) Plaintiff appeared to have blood on his clothing and face. (*Id.* Ex. A at 7.) Eventually, Plaintiff dropped the knife and was handcuffed. (*Id.*) Multiple witness reports were taken, and Plaintiff was positively identified repeatedly as the attacker, including by two victims. (*Id.* at 7-8; *see also* additional officer reports attached to Ex. A.) One of the victims had a puncture wound on his arm (FAC Ex. A at 7), which Officer Ruedi observed, while another reported Plaintiff tried to stab him in the abdomen (*id.* at 7) and held the knife to his throat (*id.* at 8).

---

[7] The Fourth Amendment is enforceable against the States through the Fourteenth Amendment. *Camara v. Mun. Ct. of City & Cnty. of San Francisco*, 387 U.S. 523, 528 (1967).

Based on the information known to Officer Ruedi at the time of arrest, he placed Plaintiff under arrest for two counts of violation of assault with a deadly weapon. Cal. Penal Code § 245(a)(1).[8] Even taking Plaintiff's allegations that he was acting in self defense as true, the allegations of the FAC do not set forth a plausible claim that Officer Ruedi acted without probable cause based on the objective circumstances surrounding the time of arrest. The defense of good faith and probable cause, available to police officers in a common law tort action, is also available in an action brought under 42 U.S.C. § 1983. *Pierson v. Ray*, 386 U.S. 547 (1967). Plaintiff describes the various reports as conflicting, but the Court has carefully and fully reviewed each report and does not find them to contradict each other. Plaintiff also repeatedly mentions a 911 call that was not included in the police report. (*See, e.g.*, FAC 6 ("Question 4: Did Officer Ruedi have a legal right to make arrest [sic] based on [omitted] information (911 caller) which he wil[]fully omitted[?]").) However, this conclusion, without more detail, doesn't help Plaintiff in this analysis. Notably, Officer Ruedi learned of the incident through a "citizen flag" and was "flagged by witnesses referenc[ing] a fight behind the Beach Lockup." (FAC Ex. A at 7.) As such, Officer Ruedi included the information he observed at that point. Based on Plaintiff's own allegations and records attached to the FAC, the facts alleged lead to the undeniable conclusion that Officer Ruedi had probable cause to arrest Plaintiff. As such, Plaintiff has failed to plead a plausible Fourth Amendment Claim for unlawful arrest. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.

Plaintiff also alleges Fourth Amendment violations when Officer Keim seized Plaintiff's car keys after he was booked into the detention center. (FAC 1-2.) Relatedly,

---

[8] California Penal Code Section 245 is titled "Assault with deadly weapon or force likely to produce great bodily injury; punishment." Section 245(a)(1) provides:

Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment.

Plaintiff alleges the keys were housed at the Oceanside Police Department, rather than the detention center. (*Id.* at 4.) Once an accused has been lawfully arrested and is in custody, the effects in his possession at the place of detention that were subject to search at the time and place of arrest may lawfully be searched and seized. *U.S. v. Edwards*, 415 U.S. 800, 807-08 (1974). Therefore, Plaintiff has no Fourth Amendment claim against Officer Keim for the officer's seizure of Plaintiff's car keys. Similarly, the FAC's claim regarding the housing of the keys is not successfully placed in the purview of the Fourth Amendment, and has failed to satisfy the pleading standards in this regard. In the Court's previous order, the Court included a discussion regarding the keys, but Plaintiff chose to plead the claim in a different manner. (*See* Order 9 n.5, Doc. No. 5.) The FAC does not satisfy the requisite pleading standards, and as such is not a claim for which relief could be granted.

Plaintiff further alleges violations of his rights under the Thirteenth Amendment, which prohibits slavery and involuntary servitude. U.S. Const. Amend. XIII; (FAC 4). Involuntary servitude "occurs when an individual coerces another into his service by improper or wrongful conduct that is intended to cause, and does cause, the other person to believe that he or she has no alternative but to perform labor." *Brogan v. San Mateo Cnty.*, 901 F.2d 762, 764 (9th Cir. 1990) (citations omitted). As was the case when Plaintiff raised a Thirteenth Amendment claim in the original complaint, the FAC, even under the most liberal of readings, is woefully deficient in stating a violation of the Thirteenth Amendment. Instead, there are no allegations made to demonstrate that Plaintiff was subjected to involuntary servitude. Accordingly, this claim also fails to satisfy the requirements necessary to survive the present motion.

Plaintiff also briefly alleges an equal protection violation and due process violation when Officer Keim allegedly told a witness "speaking on [Plaintiff's] behalf" to "go away he didn't want to hear anything he had to say." (FAC 1.)

"To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with

an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). The FAC provides no detail that would support that Defendants here acted with intent to discriminate against Plaintiff based on his being a member of a protected class. As such, to the extent the FAC alleges an equal protection violation, the claim is dismissed.

The FAC also makes various references to due process. (*See* FAC 1-2, 4.) To establish a due process violation, a plaintiff must show that he has a protected property interest under the Due Process Clause and that he was deprived of the property without receiving the process that he was constitutionally due. *Levine v. City of Alameda*, 525 F.3d 903, 905 (9th Cir. 2008). A section 1983 claim based upon procedural due process thus has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process. *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).

First, the FAC's bare references to due process are not sufficient to meet the pleading standards. *See Twombly*, 550 U.S. at 555 (noting that a plaintiff's obligation to provide grounds of his or her entitlement to relief entails more than providing labels, conclusions, or a formulaic recitation of the elements). Second, to the extent Plaintiff is arguing that he did not receive due process in terms of the eventual conviction, such an allegation would "necessarily imply" or "demonstrate" the invalidity of the earlier conviction or sentence. *Heck*, 512 U.S. at 486-87. As such, this claim is unable to proceed.

In light of the above analysis, Plaintiff's claims against the individual officers are dismissed for failing to state a claim upon which relief can be granted.

## C.   Claims Against the City

Plaintiff also brings the present action against the City of Oceanside. A local governmental unit may not be held responsible for the acts of its employee under a *respondeat superior* theory of liability. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Instead, liability under section 1983 can only be established

where the alleged constitutional violation results from an official policy or custom. *Id.* The Ninth Circuit has articulated three ways a plaintiff may establish vicarious liability against a local government entity. *See Fuller v. City of Oakland*, 47 F.3d 1522, 1534 (9th Cir. 1995). First, a plaintiff may show liability "by proving that a city employee committed the alleged violations pursuant to the city's official policy or custom." *Id.* Second, a plaintiff may show "that, rather than being the product of general official policy, on a given occasion the conduct was the result of a 'deliberate choice . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" *Id.* (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986)). Third, a plaintiff could demonstrate that "an official policymaker either delegated policymaking authority to a subordinate or ratified a subordinate's decision, approving the 'decision and the basis for it.'" *Id.* (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126-27 (1988)).

Despite these methods being set forth in the Court's prior order, the FAC fails to plead any way for the City to be liable. Moreover, the Court has already determined that Plaintiff's arrest claim fails, thus there can be no liability under the Fourteenth Amendment as to the City of Oceanside based on the officers' conduct as alleged. As to any Thirteenth Amendment violations brought against the City of Oceanside, even if Plaintiff intended to plead that he was subjected to involuntary servitude when he was required to work in accordance with prison rules during his forty-four day incarceration, such a claim is without merit. *See Berry v. Bunnell*, 39 F.3d 1056, 1957 (9th Cir. 1994) ("[T]he Thirteenth Amendment does not apply where prisoners are required to work in accordance with prison rules.")

/ / /

/ / /

/ / /

/ / /

In light of the above and after careful review, the Court determines that Plaintiff's FAC fails to state any claim upon which relief can be granted. As such, Defendants' pending motion (Doc. No. 12) is **GRANTED** and the First Amended Complaint is **DISMISSED** with leave to amend. If Plaintiff chooses to amend, he has until January 23, 2015, to file an amended complaint addressing the deficiencies noted herein. No new parties or claims may be added without leave of Court.

**IT IS SO ORDERED.**

DATED:  January 8, 2015

_____
Hon. Anthony J. Battaglia
U.S. District Judge

14cv1472 AJB (JLB)